IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAQUELINE ROBERTS HALL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security,[1] )<br>)<br>Defendants. ) | CIVIL ACT. NO.  2:11CV962-CSC<br>(WO) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On August 5, 2009, the Plaintiff, Jacqueline Roberts Hall, filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*. The claimant also filed an application for supplemental security income on August 6, 2009, pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* (R. 161). Hall alleged that her period of disability began on July 31, 2009. (R. 157). Her application was denied at the initial administrative level. Hall then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, ALJ Frank M. Klinger also denied the claim. (R. 26-39). On September 13, 2011, the Appeals Council reversed the ALJ's decision in part, holding that Hall had no transferable work skills and qualified as an individual "closely approaching advanced age" and was therefore disabled as of April l,

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

2011. (R. 7). The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. § 404.981. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). For the reasons stated below, the court concludes that the Commissioner's decision about when Hall's disability began is due to be reversed and remanded for further proceedings.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or former occupation?
> (5) Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ISSUES

**A. Introduction.** Hall was born on May 7, 1961. (R. 157). She completed high school and two years of trade school where she trained as a keypunch operator. (R 49, 179). Her past work experience includes work as an aide for a Headstart program. (R. 52, 62).

---

[3] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See Sullivan v. Zebley*, 493 U.S. 521,525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Hall contends that she is unable to work due to Blount's disease in her left leg[4] and varus left knee;[5] lymphedema and edema; degenerative joint disease with bursitis and pain in the left hip, knee, and ankle; joint pain and numbness in her hands; morbid obesity; hypertension; diabetes mellitus; sleep apnea; anemia; hemorrhoids; hypercholesteremia; and depression. (*See* R. 46-71). Following the hearing, the ALJ concluded that Hall had the following severe impairments:

> morbid obesity status post gastric bypass; degenerative joint disease with bursitis and pain in the left hip, knee, and ankle; hypertension; diabetes mellitus; sleep apnea; history of anemia; history of hemorrhoids; and depression.

(R. 28).

In addition, the ALJ concluded that Hall had the nonsevere impairment of hypercholesteremia. (R. 28). The ALJ further concluded that Hall's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. (R. 28-29). The ALJ determined that Hall had the residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) or work that allows her a sit/stand option at her option. She is mildly impaired in her activities of daily living, social functioning, ability to concentrate and persist at an appropriate pace, ability to understand, remember, and carry out instructions and to respond appropriately to supervision, coworkers, and work pressures in a work setting. She is also mildly impaired in her abilities to

---

[4] A childhood growth disorder in which the lower leg turns inward, resembling a bow leg. (R. 228).

[5] A varus knee is a malaligned (bow leg) knee that shifts the load bearing axis to the inside of the knee. (R. 230).

respond appropriately to supervisors, coworkers, customers or members of the general public, deal with changes in a routine work setting and understand, remember and carry[]out and use . . . judgment in simple one-two step tasks and instructions.

(R. 31).

The ALJ concluded that Hall was unable to return to her past relevant work. (R. 37). However, the ALJ concluded that Hall did have the residual functional capacity to perform other jobs that exist in significant numbers in the national economy, and thus, she was not disabled. (R. 38).

> **B. Plaintiff's Claims.** According to the plaintiff, the primary issues are as follows:
>
> 1. Whether the ALJ erred by failing to consider Hall's alleged impairment of lymphedema and its effects on her daily living;
>
> 2. Whether the ALJ failed to properly consider Hall's obesity;
>
> 3. Whether the ALJ failed to provide adequate reasons for rejecting Hall's subjective complaints of pain, and whether his rejection of those complaints is supported by substantial evidence;
>
> 4. Whether the ALJ failed to give proper weight to the opinions of Hall's treating physicians and omitted critical information from the medical evidence; and
>
> 5. Whether substantial evidence supports the ALJ's conclusion that Hall was able to perform sedentary work.

(Doc. 14 p. 3).

The court concludes that the ALJ erred by failing to state adequate reasons for rejecting Hall's subjective complaints of hand pain and numbness, and that his reasons for rejecting those complaints are not supported by substantial evidence. *See Foote v. Chater*,

67 F.3d 1553, 1561-62 (11th Cir. 1995) (holding that an ALJ must state explicit and adequate reasons for discrediting a claimant's testimony as to her pain). Therefore, the court pretermits discussion of the remaining issues identified by the plaintiff.

## IV.  Discussion

### A.  Hall's Hand Pain and Numbness is a Severe Impairment.

At the second step of the analytical process, the ALJ must first determine whether the claimant has a severe impairment. *McDaniel*, 800 F.2d at 1030.  "[A] 'severe impairment' [is] defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (quoting 20 C.F.R. § 404.1520(c)).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  20 CFR § 404.1521.  An impairment can be considered as "not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); see also *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).  To satisfy the "mild" burden to demonstrate a severe impairment at step two, the claimant "need show only that [his] impairment is not so slight and its effect is not so minimal." *McDaniel*, 800 F.2d at 1031. The step two severity analysis is a threshold inquiry that allows only "claims based on the most trivial impairment to be rejected." *McDaniel*, 800 F.2d at 1031.

The record includes medical evidence, including objective medical diagnostic

evidence, confirming that Hall suffers from numbness and pain in her hands that is more than trivial, and therefore, qualifies as a severe impairment. In August 2009, when Hall first applied for disability benefits, she alleged that her hands would limit her ability to work because they would "cramp up and get numb from writing and typing."[6] (R. 174; *see also* R. 176, 182, 188). At the hearing before the ALJ, Hall testified that her right hand "gets numb sometimes." (R. 50). She testified that she had problems "in both hands, but . . . more in the right." (R. 54). She testified to pain, cramping, swelling, and numbness in her right hand. (R. 54, 59). Hall stated that her right hand "would just like get big and [she]'d have to keep shaking and moving it around to make the feeling come back in it and in the palm of my hand, it would just hurt." (R. 54). She testified that pain in her hands wakes her up at night. (R. 54). She stated that her hands "go to sleep and they hurt." (R. 59).

The medical record contains evidence that Hall suffers from pain and numbness in both hands. On December 18, 2009, Hall presented to the doctor with complaints of joint pain in both hands, but more pain in the right. (R. 303). In May, 2010, a physician noted that she presented with paresthesia in her hands. (R. 307). In August, 2010, she presented with complaints of shooting pain in her upper extremities and was diagnosed with neuropathy, for which Lyrica was prescribed. (R. 310). On May 7, 2010, she was prescribed Tylenol for arthralgia after she complained that over-the-counter Tylenol was not effective in resolving her joint pain; a physician's note remarked that Hall was "avoiding NSAIDS due to previous

---

[6] In his opinion, the ALJ stated that Hall first reported pain in her hands in November 2009 (R. 32); however, the ALJ's statement on this point is not supported by the record. (*See* R. 172, 174 176, 182, 188).

gastric bypass." (R. 311-12). In December 2010, Hall sought treatment for joint pain in both hands, which she reported occurred throughout the day, awakened her at night, and was not relieved by Tylenol. (R. 313). After a Tinel's test which revealed "positive Tinel signs bilaterally," the physician diagnosed Hall with bilateral carpel tunnel syndrome and prescribed vitamin B6 and Aleve. (R. 313-14).

The court notes that, although the ALJ discounted Hall's allegations of the *extent* of her hand pain and numbness at later stages of the analytical process, the ALJ also clearly acknowledged at those stages of the analytical process that Hall suffered from hand pain and numbness, and that Hall had undergone at least some medical diagnoses and treatments for hand pain and numbness.(R. 31-37).

The record supports Hall's allegation that her hand pain and numbness are not so slight or trivial that it could not be considered a severe impairment at step two of the analytical process. *See McDaniel*, 800 F.2d at 1031 ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). The record does not contain substantial evidence to support a finding that Hall's hand pain and numbness, alone or in combination with other impairments, are such slight abnormalities "that [they] would clearly not be expected to interfere with [her] ability to work, irrespective of age, education or work experience." *McDaniel*, 800 F.2d at 1031. Accordingly, substantial evidence does not support the ALJ's failure to identify Hall's hand pain and numbness as severe impairments.

**B.     The ALJ Erred In Discounting Hall's Complaints of Hand Pain and Numbness at Steps Four and Five of The Analytical Process**

The presence of any severe impairment, "whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two" of the analytical process. *Jamison v. Bowen*, 814 F. 2d 585, 588 (11th Cir. 1987); *see also Heatly v. Comm'r of Social Sec.*, 382 Fed. Appx. 823 (11th Cir. 2010) (panel decision). Here, consistent with the regulations and applicable law, the ALJ credited Hall with severe impairments at step two and proceeded forward with the sequential evaluation. Thus, even though Hall's hand pain and numbness should have been included as a severe impairment at step two, the omission constitutes reversible error only if the ALJ failed in subsequent steps of his analysis to fully account for functional limitations arising from that impairment. *See Heatly*, 382 Fed.Appx. 823; *see also Burgin v. Comm'r of Social Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (panel decision) ("Even assuming the ALJ erred when he concluded [the claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Delia v. Comm'r of Social Sec.*, 433 Fed. Appx. 885, 887 (11th Cir. 2011) (panel decision) ("Because the ALJ gave full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later stages of the analysis, the error [in failing to identify the claimant's mental impairments as a severe disability] at step two was harmless and is not cause for reversal.").

9

Hall is right-handed. (R. 54, 255). In response to questions from the ALJ and Hall's attorney, the vocational expert testified that, if Hall's testimony about numbness and pain in her dominant hand were taken into consideration, and if she had "numbness in the dominant hand and pain, . . . that would preclude frequent or continuous use of the hands," then Hall could not perform any jobs that are available in the national economy. (R. 69-70). Therefore, if the ALJ erred in failing to credit Hall's subjective complaints of hand numbness and pain, Hall is disabled, and the error was not harmless.

When a claimant attempts to establish disability through her own testimony of pain and other subjective symptoms, a three-part "pain standard" applies. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* If the ALJ determines that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of the claimant's pain limits her ability to work. 20 C.F.R. §§ 404.1529(b), 416.929(b). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians and other evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). A claimant's testimony supported by medical evidence that

satisfies the pain standard is sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Id.* at 1561-62; *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

In determining Hall's residual functional capacity, the ALJ generally discredited subjective allegations of disability because she stopped working in May 2009 for reasons unrelated to her disability and thereafter received unemployment compensation into the third quarter of 2009. (R. 36). However, Hall has not claimed that she stopped working due to disability; rather, she alleges that she stopped working in May 2009 due to the seasonal nature of her work, and thereafter, her period of disability began on July 31, 2009. (R. 157, 174; R. 50 ("I was planning to go back to work, but the pain just became unbearable and I couldn't go back.")). Hall's earnings report does reflect that she received $870.00 in unemployment benefits during the third quarter of 2009, the quarter that includes July 31, 2009, but the earnings record does not state whether she received benefits after July 31, 2009. (R. 153, 166). Hall's application for social security benefits, submitted under penalty of perjury, states that, as of August 1, 2009, she received food stamps but had no other source of income. (R. 156, 159, 162). Nothing in the record suggests that, during Hall's alleged period of disability, she collected any unemployment benefits or made any inconsistent statement to the Alabama Department of Industrial Relations that she was ready and willing to work after July 31, 2009. Rather, contrary to the ALJ's reasoning, the record is fully

consistent with Hall's testimony as to her alleged onset date of disability, and the ALJ's suggestion of dishonesty is unfounded.

Further, in determining Hall's residual functional capacity, the ALJ recognized that Hall suffered from bilateral hand pain (R. 34-36), but the ALJ discounted Hall's allegations about the severity of her hand pain and numbness because, according to the ALJ, "the doctor assessed bilateral carpel tunnel syndrome apparently without the benefit of diagnostic testing," and because her hand pain was treated conservatively and she was taking Aleve for her carpal tunnel syndrome. (R. 33). The ALJ further stated that the record contained no "medical signs or laboratory findings" or any medical evidence to substantiate Hall's allegation of numbness in her right hand. (R. 35-36).

However, the medical record *does* contain uncontroverted medical evidence, diagnostic testing, and medical findings to substantiate Hall's claim that she suffered from numbness in her right hand. Specifically, in May, 2010, a physician noted that she presented with paresthesia in her hands. (R. 307). In August, 2010, she presented with complaints of shooting pain in her upper extremities and was diagnosed with neuropathy, for which Lyrica was prescribed. (R. 310). Further, *as the ALJ himself noted*, in December, 2010, after Hall's physician performed a Tinel's test[7] which revealed "positive Tinel signs bilaterally," the physician diagnosed Hall with bilateral carpel tunnel syndrome and prescribed vitamin B6 and Aleve. (R. 33, 313-14). Thus, there is no factual support for the ALJ's finding that the

---

[7]The test for Tinel's sign is a test used in the diagnosis of carpal tunnel syndrome. *See* http://www.webmd.com/pain-management/carpal-tunnel/carpal-tunnel-syndrome-exams-and-tests.

medical record lacks evidence to substantiate Hall's allegations of hand pain and numbness, or that Hall's physician diagnosed carpel tunnel syndrome without any diagnostic testing. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (holding that the Commissioners's decision is subject to reversal if it is not supported by substantial evidence).

The remaining reason given by the ALJ for discrediting Hall's allegations of hand pain and numbness – infrequent and conservative medical treatment with over-the-counter medications – also does not provide a basis for affirmance in this case. The record does support the ALJ's observation that Hall sought limited medical treatment for her hand pain and her other medical conditions, and that she was placed on Aleve and vitamin B6 rather than prescription narcotics for her bilateral carpel tunnel syndrome. (R. 35)  However, at the hearing in this case, Hall testified that she "really need[ed] the disability so [she] can go to the doctor and get the help [she] need[ed]." (R. 61).  Hall is on food stamps and has not received any other income since August 1, 2009.   (R. 49-50, 156, 159).  The record establishes that Hall was unable to afford medical treatment and medications for other medical conditions because she had no insurance and could not afford it, and that she received assistance from the Montgomery Area Community Wellness Coalition to pay for diabetes medication. (R. 262, 299, 304, 310, 318).  She sought treatment for her bilateral hand pain, and was diagnosed with carpal tunnel syndrome, through Community Care Network, an indigent healthcare provider.  (R. 302); http://www.ccncares.org/.

"To a poor person, a medicine that [s]he cannot afford to buy does not exist." *Dawkins*

*v. Bowen,* 848 F.2d 1211,1213 (11th Cir. 1988) (*quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Therefore, in this circuit, "when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). Further, when the claimant's failure to obtain medical treatment is the sole ground for finding that a claimant is not disabled, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the treatment. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). In this case, the ALJ discounted Hall's complaints of hand pain and numbness in reliance on Hall's "relatively infrequent trips to the doctor" and treatment with over-the-counter medications, but the ALJ did not develop the record or make any findings as to whether Hall's poverty caused her to be unable to afford more extensive treatment for her hand pain and numbness. Thus, the ALJ failed in his duty to develop the record and in his duty to make a determination as to whether poverty accounted for Hall's failure to seek more extensive treatment. *Ellison*, 355 F.3d at 1275; *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). Accordingly, this case must be remanded for the ALJ to make appropriate inquiry as to whether, in light of Hall's poverty and the record of limited medical treatment for numbness and pain in her hands, Hall was disabled before April 1, 2011.

## V.  CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion. It is further

**ORDERED** that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 n.1 (11th Cir. 2008).

A separate final order will issue.

Done this 29th day of March, 2013.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE